Opinion issued May 14, 2010

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00208-CV

———————————



IN RE VALVOLINE COMPANY, A DIVISION OF ASHLAND, INC.

 



 



Original Proceeding on Petition for Writ of Mandamus

 



 

MEMORANDUM OPINION

          Relator, Valvoline Company, A Division
of Ashland, Inc. (“Ashland”), requests this Court to vacate Respondent’s[1]
February 26, 2010 order compelling Ashland to answer “Plaintiff’s First Amended Interrogatories and Requests
for Production.”  Because the trial court abused
its discretion when it signed the discovery order, we hold that Ashland is
entitled to mandamus relief.

Background

Robert Russell (“Robert”) worked in automotive service stations from 1955
until 1985.  Russell developed acute
myeloid leukemia and died in 2005.

Mr. Russell’s wife, Gloria Russell
(“Gloria”), in her capacity as representative of Robert’s estate, filed suit
alleging that Robert developed leukemia as a result of exposure to benzene
contained in various products Robert had used during his employment.  Gloria sued Ashland and a number of other
companies. She asserted number of legal theories, including products liability.
 Gloria alleged that Ashland and the
other defendant companies had manufactured and supplied the benzene-containing
products that caused Robert’s leukemia.  

In answering Ashland’s
interrogatories, Gloria asserted that Robert had used the following products
manufactured by Ashland during his employment from 1955 to 1985: Valvoline carburetor
and choke cleaner, Valvoline engine treatment, and Valvoline fuel system cleaner.  Gloria also sent interrogatories and requests
for production to Ashland.  Gloria’s
First Amended Interrogatories and Requests for Production to Ashland contained 19
interrogatories and 16 requests for production. 
Ashland answered the first interrogatory without objection, but objected
to the remaining interrogatories and requests for production.  

Gloria filed a motion to compel Ashland
to answer the discovery.  Ashland filed a
response to the motion.  As it had in
response to the discovery requests, Ashland reiterated its objections that the
discovery requests are “vague and ambiguous, overly broad, unduly burdensome,
and not reasonably calculated to lead to the discovery of admissible
evidence.”  

The trial court conducted a
hearing on the motion to compel.  At the
hearing’s conclusion, the trial court overruled Ashland’s objections and
granted Gloria’s motion to compel.  The written
order signed by the trial judge required Ashland “to give full and complete
answers to the foregoing interrogatories and requests for production without
objection responsive to Plaintiff’s First Amended Interrogatories and Requests
for Production . . . .”  In its petition
for mandamus, Ashland requests that we order the trial court to vacate the
order compelling discovery.

Mandamus Relief In Discovery Disputes

          To
be entitled to extraordinary relief in a writ of mandamus, the relator must
show that the trial court clearly abused its discretion and that there is no
adequate remedy by appeal.  In re Team Rocket, L.P., 256 S.W.3d 257,
259 (Tex. 2008) A trial court abuses its discretion when it reaches a decision
so arbitrary and unreasonable as to constitute a clear and prejudicial error of
law, or if it clearly fails to correctly analyze or apply the law.  In re
Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005); see Walker v. Packer, 827 S.W.2d 833,
839 (Tex. 1992). 

          A
trial court has discretion to control the scope of discovery for the cases over
which it presides.  See Dillard Dep’t Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex. 1995).  Nonetheless, a trial court must make an
effort to impose reasonable discovery limits.  In re
Am. Optical Corp., 988 S.W.2d 711, 713 (Tex. 1998).  

The trial court should not order
discovery exceeding what is permitted by the rules of procedure.  In re
CSX Corp., 124 S.W.3d 149, 152 (Tex. 2003). 
The rules of procedure define the general scope of discovery as “any
unprivileged information that is relevant to the subject of the action, even if
it would be inadmissible at trial, as long as the information sought is
‘reasonably calculated to lead to the discovery of admissible evidence.’”  Id.;
see Tex.
R. Civ. P. 192.3(a).  Although the
scope of discovery is broad, requests for discovery must be tailored to include
only matters relevant to the case.  See Am. Optical Corp., 988 S.W.2d at 713.  Thus, a trial court abuses its discretion
when it compels overly broad discovery.  In re Graco Children’s Prods., Inc., 210
S.W.3d 598, 600 (Tex. 2006).

Discovery Regarding Specific Products

          Ashland first asserts that the trial court improperly compelled discovery
relating to Ashland products that had not been identified by Gloria as products
that Robert had used.  

It is well-settled that discovery
may not be used as a fishing expedition.  K Mart
Corp. v. Sanderson, 937 S.W.2d 429, 431 (Tex. 1996); Dillard Dep’t Stores, Inc., 909 S.W.2d at 492.  A party may obtain discovery of the contents
of documents that constitute or contain matters relevant to the subject matter
of the action.  See Tex. R. Civ. P.
192.3(b); Texaco, Inc. v. Sanderson,
898 S.W.2d 813, 814 (Tex. 1995).  Whether
discovery is overly broad in products liability cases depends on whether the
order covers products relevant to the case and is reasonable in its scope.  In re
Deere & Co., 299 S.W.3d 819, 820 (Tex. 2009).

The Supreme Court of Texas has granted
mandamus relief in products-liability cases when the discovery order compelled a
defendant to respond to discovery requests related to products that the
plaintiff had never used.  See, e.g., Graco Children’s Prods., 210 S.W.3d at 600–01 (granting relief on
discovery order regarding documents related to products that did not relate to
alleged defects in harness clip of car seat at issue); Am. Optical Corp., 988 S.W.2d at 713 (granting relief on order
allowing discovery related to respiratory protection equipment plaintiffs never
claimed to have used); Sanderson, 898
S.W.2d at 814 (granting relief on discovery order regarding substances to which
plaintiffs never alleged exposure). 
Texas courts of appeals have also granted mandamus relief under such
circumstances.  In re Sears Roebuck & Co., 123 S.W.3d 573, 578 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (granting relief on order
allowing discovery of products to which plaintiffs were never exposed); In re Merck & Co., 150 S.W.3d 747,
750 (Tex. App.—San Antonio 2004, orig.
proceeding) (granting relief on order allowing discovery of “pharmaceutical
product that the deceased plaintiff never used, that has yet to be sold within
the United States, and that has a different chemical structure and patent than
the purportedly defective medication at issue”).  

Here, Ashland complains of
Interrogatory No. 2, which provides as follows:

INTERROGATORV NO. 2:

For Ashland,
Inc. products below

• For the
years 1967–1985: Valvoline motor oil, Valvoline carburetor cleaner, Valvoline
brake cleaner, Valvoline choke and carburetor cleaner, Valvoline engine
treatment, Ashland, Inc. toluene, Ashland mineral spirits, Ashland Rule 66 Mineral
Spirits and Ashland’s Pittsburgh Mineral Spirits:

 

Please
provide answers to the following questions a-j:

a. The full
and correct name(s) of the product;

b. The
percentage or amount of benzene in each product;

c. The parts
per million (ppm) benzene content of each product;

d. The
seller(s), distributor(s) and/or supplier(s) from whom Defendant purchased chemicals
placed in the product;

e. The
foreseeable users of the product (such as custodians, laborers, industry specific
applications, etc.);

f. A
description of any warnings that Defendant placed on the product or its packaging,
operating manuals, brochures, catalogs, or other related printed material.  This description should include the precise
language of the warning, the size of the warning, the location on the product
or its packaging where the warning was  printed,
when the warning was first placed on the product and the time period the warning
has been on the product;

g. If it is
your contention that you took the proper precautions to protect users of your
benzene-containing product(s) from potential hazards associated with the use of
said benzene-containing products(s), please identify any such precautions and actions
taken by you;

h. When
Defendant became aware of possible substitutes for the benzene containing product;

i. The amount
of exposure Ashland, Inc. expected to occur at the breathing zone of an
end-user; and

j. any change
in the warning or label from 1967 to present.

 

Ashland contends that Gloria is
not entitled to discovery regarding the following products listed in the Interrogatory
No. 2: Ashland, Inc. toluene, Ashland mineral spirits, Ashland Rule 66 Mineral
Spirits, and Ashland’s Pittsburgh Mineral Spirits.  Ashland points out that the mineral spirits
and toluene products listed in Interrogatory No. 2 “had never been previously identified
in any of Plaintiff s pleadings, written discovery responses, or in any prior
depositions,” as products to which Robert had been exposed.  

Gloria asserted in her amended
motion to compel that the Ashland mineral spirits and toluene products identified
in Interrogatory No. 2 “have been identified as the source of the benzene use
by Safety-Kleen,” another defendant in the suit.  Gloria contends that the disputed products
were component parts of Safety-Kleen’s products that she alleges her husband
used during his employment.  At the
hearing on the motion to compel, Gloria’s attorney explained to the trial court
that, in response to discovery requests, Safety-Kleen had produced documents
indicating that Ashland had supplied benzene-containing substances to Safety-Kleen.  Gloria attached a number of these documents to
her amended motion to compel.  

We agree with Ashland that the
documents appended to Gloria’s motion to compel do not show that Robert was
exposed to the Ashland mineral spirits and toluene products listed in
Interrogatory No. 2.  Gloria attached only
the documents produced by Safety-Kleen.  Gloria
did not attach the discovery requests propounded to Safety-Kleen, which she
claims yielded the documents.  Thus, the wording
of the specific discovery requests to which Safety-Kleen produced these
documents is not known.  

In addition, as pointed out by Ashland,
a number of the Safety-Kleen documents offered by Gloria are from 1991.  Gloria alleges that Robert’s benzene exposure
ended in 1985.  Furthermore, the
documents do not indicate how Safety-Kleen used the Ashland mineral spirits and
toluene products listed in Interrogatory No. 2.  In short, nothing in the documents shows that
the Ashland products were used to make the Safety-Kleen products to which
Robert was allegedly exposed. 

As one court observed, 

It is not enough-even
for discovery purposes-to guess what products may have injured a plaintiff.  Nor is it enough that a plaintiff was “at
least potentially exposed” to a product, as anyone can be “potentially exposed”
to everything.  In order to justify the
cost of producing documents and information, there must be a likely benefit.  There is no benefit in conducting discovery
relating to products as to which there is no evidence [the plaintiff] was ever
exposed.

 

Sears,
Roebuck & Co., 123 S.W.3d at 578.

 

          The
same can be said here.  No benefit exists
for engaging in discovery regarding the disputed Ashland products when there is
no evidence in the record that Robert was exposed to those products.    

          We
conclude that Interrogatory No. 2 could have been more narrowly tailored.  See CSX
Corp., 124 S.W.3d at 153.  Because
Interrogatory No. 7 and Requests for Production Nos. 1 and 4 correspond to Interrogatory
No. 2, those requests could also be more narrowly tailored and are overly broad
in scope.  The trial court abused its
discretion by compelling Ashland to answer those discovery requests.

Time Period for Requests

          Ashland contends that many of the discovery requests are overly broad
because they cover an exceedingly long time period, which stretches two-and-one-half
decades beyond the date of Robert’s alleged benzene exposure.  The supreme court has made clear that a discovery
order “requiring document production from an unreasonably long time period” is
“impermissibly overbroad and may be subject to mandamus relief.”  In re
Dana Corp, 138 S.W.3d 298, 301 (Tex. 2004) (quoting CSX Corp., 124 S.W.3d at 152); see
Am. Optical Corp., 988 S.W.2d at 713 (concluding that discovery order was
overly broad by requiring production of “virtually all documents regarding its
products for a 50-year period”); In re
Jacobs, 300 S.W.3d 35, 44 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding)
(“Overbroad requests encompass time periods or activities beyond those at issue
in the case-in other words, matters of questionable relevance.”).  

          As
mentioned, Gloria has alleged that Robert was exposed to benzene-containing
products during his employment from 1955 to 1985.  The majority of Gloria’s discovery requests
require Ashland to provide information for a time period that exceeds the
alleged period of exposure by 25 years.  The
time frame defined in many requests includes the exposure period and continues
“to the present.”  The following discovery
requests are illustrative:

INTERROGATORY NO. 3:

From 1967 to
the present, did any officer, agent and/or employee of you and/or any predecessor/related
entity, attend any meeting, conference, seminar, symposium and/or like gathering
(including, but not limited to, one sponsored by any trade
association/organization), at which benzene, the benzene industry, the health
hazards of benzene, benzene-related disease, working with and/or around benzene
and/or benzene claims/litigation was discussed? If so:

 

a.    
Identify each such officer/agent/employee;

b.    
Identify the gathering, including date, location,
sponsor and participants;

c.     
Describe the content of any and all discussions
relating to benzene, the benzene industry, the health hazards of benzene,
benzene-related disease, working with and/or around benzene and/or benzene
claims/litigation;

d.    
Identify the trade organization or other
organization, if any, related to the gathering; and

e.     
Identify any and all documents referring to,
relating to, and/or reflecting said gathering.

 

 

lNTERROGATORY
NO. 15:

 

From 1976 to the present, if Defendant complied with
15 U.S.C. 2607, please state all efforts taken to comply with the same.

 

INTERROGATORY
NO. 17:

 

Did Defendant, any predecessor or any related
company, or any medical department or industrial hygiene department or
industrial hygiene division thereof, maintain a medical and/or scientific library
at any time from 1958 to the present? If so:

 

a.    
State the dates such libraries existed; and

b. State the present location of any and all books,
documents and/or materials that were at said library.

 

In addition,
Interrogatory Nos. 5, 6, 9, 12, 13, and 18 and Request for Production Nos. 2,
3, 6, 9, and 15 request information and documents for a period that includes “to
the present.”  

At the motion to compel hearing, the trial court inquired about the scope
of the time frames identified in the requests. 
The court inquired only whether the time frames reach too far back in
time.  Gloria explained to the court why discovery
of information reaching back in time, for example, to 1958, 1967, or 1976 was
relevant to her claims.  The trial court
did not inquire, and Gloria did not explain, why discovery should be permitted for
a period to include “to the present,” when the last year of Robert’s alleged
benzene exposure was 1985.  

In support of its response to the motion to compel, Ashland attached the
affidavit of its manager of company documents and records.  The manager testified, “Searching for records
relating to employees and products from the mid 1950s until the present, if
they existed, would potentially require review of hundreds of thousands of
documents, if not more, and would take an exorbitant amount of man-hours.”

The supreme court held in CSX Corp.
that an interrogatory requiring the defendant company to identify all safety personnel
employed for a 30-year period was impermissibly broad.  124 S.W.3d at 153.  The supreme court stated, “A central
consideration in determining overbreadth is whether the request could have been
more narrowly tailored to avoid including tenuous information and still obtain
the necessary, pertinent information.”  Id. 


In American Optical Corp., an
asbestos case, the supreme court ruled that the trial court’s order for the
corporate defendant to turn over every document generated regarding asbestos
for a 50-year period was impermissibly broad. 
988 S.W.2d at 713.  Likewise, in Dillard Department Stores, the court determined
that a request for Dillard to produce documents covering a five-year-time
period and twenty states was overly broad as a matter of law.  909 S.W.2d at 492.  Lastly, the supreme court held in Sanderson that a request for all safety
and toxicology documents written by Texaco’s safety director during time
periods when the plaintiffs did not work on the premises was overly broad.  898 S.W.2d at 815; see In re Mallinckrodt, Inc., 262 S.W.3d 469, 473–474 (Tex. App.—Beaumont 2008, orig. proceeding)
(granting mandamus relief in benzene case in which discovery requests included
time periods extending past claimed exposure period); In re TIG Ins. Co., 172 S.W.3d 160, 166 (Tex. App.—Beaumont 2005,
orig. proceeding) (granting mandamus relief, in part, because discovery
requests covered periods exceeding three-year period at issue).  

As in the preceding cases, we conclude that Gloria’s discovery requests,
which include the 25-year period since Robert’s last alleged benzene exposure,
are overly broad.  The requests could be
more narrowly tailored to exclude the period following Robert’s claimed benzene
exposure.  It may be determined that, to some
degree, the relevant dates for discovery purposes do exceed the date of Robert’s
last alleged benzene exposure, but the trial court has a duty to make an effort
to impose reasonable discovery limits.  See TIG
Insurance, Inc., 172 S.W.3d at 167.
 To the extent that some information and documents
might be relevant beyond the years of Robert’s exposure, the time limits placed
on the discovery must be limited in a manner that requests only information
that is reasonably calculated to lead to admissible evidence.  See
id.  

We conclude that Gloria’s requests that include the period “to the
present” could have been more narrowly tailored.  For this reason, we hold that the trial court
abused its discretion when it compelled Ashland to answer Interrogatory Nos. 3,
5, 6, 7, 9, 12, 13, 15, 17, and 18 and Request for Production Nos. 2, 3, 6, 9, 11,
13, and 15.

Ashland also lodged an overly-broad objection to a number of Gloria’s
discovery requests that contain no time limitation.  The following interrogatories and requests
for production contain no time limitation:

INTERROGATORV NO. 4: 

Identify each and every officer, employee, agent and/or
representative of you and/or any predecessor entity, who:

 

a.    
Served as an officer, director or official of any
trade organization, association or entity identified in interrogatory number 3;

b. State the title of the individual or capacity in which s/he served; and


c.  State the applicable dates of
service.

 

INTERROGATORV NO. 10: 

If this Defendant contends there exists a safe cumulative
level of exposure to benzene, please state what that level is in parts per
million/years.

 

INTERROGATORV NO. 11: 

Please provide the basis for this Defendant's
corporate position on the safe level of cumulative exposure to benzene.[2]

 

REQUEST
FOR PRODUCTION NO. 14:

 

Please produce all documents and tangible things
relating to Defendant's documents and records retention (and/or destruction)
policies or procedures, including, but not limited to: 

 

a.  any supplements, addenda, memoranda,
operating bulletins, revisions, or any other superseding instruction that refer
to the stoppage, suspension or resumption of responsive policies or procedures;
and

b.  policies or procedures regarding documents or
records created, maintained, or stored by electronic, digital, optical and/or
magnetic means (such as microfilm, microfiche, imaging, scanning, or storage on
tapes, CD or DVD based media, databases, or on any computer hardware, backup
system, download system, file dumping or other system of information
management, whether on-site or off-site).

 

REQUEST FOR PRODUCTION NO. 16: 

 

Please
produce the closing binders and/or final transaction documents related to all
transactions in which Defendant agreed to (or not to) indemnify, defend or hold
harmless the tort liabilities of any third party which manufactured, produced,
distributed, supplied or sold a Defendant’s products at issue in this case.

 

The supreme
court in Deere & Company recently
granted mandamus relief in a case in which the trial court had failed to
include a time limit in its order compelling discovery.  299 S.W.3d at 821; see also In re BNSF Ry. Co., 2006 WL 3239954, at * 1 (Tex.
App.—Beaumont 2006, orig. proceeding) (mem. op.) (granting mandamus relief in
case in which order compelling discovery included no time limit).  Here, the discovery requests, which have no defined time limitation, could have
been more narrowly tailored.  Thus, we
hold that the trial court abused its discretion when it compelled Ashland to
answer Interrogatory Nos. 4, 10, and 11 and Request for Production Nos. 7, 8,
14, and 16. 

Similar concerns are presented by Interrogatory No. 8 and its
corresponding request for production, which read as follows:   

INTERROGATORV NO. 8: 

If this
Defendant disagrees with the American Petroleum Institute’s September 1948
Toxicology Review that “the only absolutely safe concentration for benzene is
zero,” please:

 

a.  Provide the factual basis to support this
position; and

b.  Detail the documents supporting this position

 

REQUEST FOR
PRODUCTION NO. 5: 

The documents
forming the basis of Defendant’s response to Interrogatory 8(b).

 

As written, these requests ask
Ashland to state its current position regarding benzene levels.  The requests do not ask Ashland to explain
what its position was during the relevant time of Robert’s alleged exposure to
benzene-containing products manufactured by Ashland.  Thus, the above requests could be more
narrowly tailored to seek information relevant to the case.  We conclude that the trial court abused its
discretion when it compelled Ashland to answer Interrogatory No. 8 and Request
for Production No. 5.

Remaining Discovery
Requests

          Interrogatory No. 14 and its corresponding Request for Production No. 10
read as follows:

INTERROGATORY NO. 14:

Regarding
previous and pending benzene-related lawsuits from 1967 to the present, please provide
the following information:

 

a.  Names of people providing non-expert testimony
on behalf of this Defendant;

b.  Names of the expert testimony on behalf of
this Defendant; and

c.  Cause number and/or styling of the case in
which the testimony was provided.

 

REQUEST FOR
PRODUCTION NO. 10:

The documents
described in Defendant’s response to Interrogatory 14 (a)-(f) [sic].

 

          At
the motion to compel hearing, Gloria’s counsel recognized that Interrogatory
No. 14 was overly broad because “benzene-related lawsuits” is undefined in the
discovery requests.  Counsel also
recognized that the request was not limited to suits containing claims similar
to this suit.  Gloria’s counsel agreed to
limit the requests to suits against Ashland in which it was alleged that
benzene caused acute myelogenous leukemia, which is the disease alleged to have
been caused by benzene in this case. 
Despite the oral stipulation, the trial court’s order does not limit the
discovery requests to only suits involving acute myelogenous leukemia.  On its face, the order requires Ashland to
answer Interrogatory No. 14 and Request for Production No. 10 as written.  

          The
record reflects that it is not disputed that these requests are overly broad
and can be more narrowly tailored.  We
conclude that the trial court abused its discretion when it ordered Ashland to
answer Interrogatory No. 14 and Request for Production No. 10.  See Deere
& Co., 299 S.W.3d at 820–21 (granting mandamus relief because order
compelling discovery did not contain time limitation, even though parties had
agreed at hearing that discovery would be limited to a 12- to 15- year period).

          The
trial court’s order also compels Ashland to answer Interrogatory No. 16 and corresponding
Request for Production No. 12, which provide as follows:

INTERROGATORY NO. 16:

 

Please state
when this Defendant first identified or designated benzene as a suspected human
carcinogen.

 

REQUEST FOR
PRODUCTION NO. 12:

The documents
described in and forming the basis of Defendant’s response to Interrogatory 16.

 

          Ashland
objected, in part, to the requests on the basis that they sought “information
about a broad and non-specific medical category of ‘human carcinogens’ which
information is unrelated to the specific type of cancer at issue in this case.”  As with Interrogatory No. 14 discussed above,
we agree with Ashland that Interrogatory No. 16 and corresponding Request for
Production No. 12 could be more narrowly tailored to request information
related to only the disease at issue here: acute myelogenous leukemia.  

          Moreover,
we note that Ashland answered Interrogatory No. 16, subject to its
objections.  Ashland responded, 

Defendant
states that a consensus was reached in the medical and scientific community
that the relevant and reliable epidemiologic studies reported in the literature
beginning in the mid-1970’s collectively demonstrated an association between
long-term chronic exposure to high occupational concentrations of benzene in
the workplace and an increased risk of acute myelogenous leukemia in humans.

 

          We
conclude that the trial court abused its discretion when it ordered Ashland to
respond to Interrogatory No. 16 and corresponding Request for Production No.
12.

          Lastly,
the trial court ordered Ashland to answer Interrogatory No. 19, which provides
as follows:

INTERROGATORY NO. 19:

 

Please list
any and all chemical and/or agents that you contend may have played any part in
causing Plaintiff to contract AML [acute myelogenous leukemia] and from what
source you contend the exposure resulted.

 

          Ashland
objected to this interrogatory “on the grounds that it is overly broad, unduly burdensome,
vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible
evidence.”  However, subject to that
objection, Ashland answered the interrogatory as follows: “Defendant is not contending
that any chemicals or agents caused the Decedent’s AML.”  Thus, Ashland has answered the
interrogatory.  The trial court abused
its discretion in requiring Ashland to further answer Interrogatory No. 19.

Conclusion

          For the reasons discussed herein, we hold that the trial court abused
its discretion by ordering Ashland to answer “Plaintiff’s First Amended Interrogatories and Requests for Production.”[3]
 Accordingly, we hold that Ashland is
entitled to mandamus relief.  We will
issue the writ only if the trial court fails to vacate its February 26, 2010 order compelling Ashland
to answer Gloria’s discovery. 

 

 

                                                          Laura
Carter Higley                                                                                             Justice

 

Panel
consists of Chief Justice Radack and Justices Alcala and Higley.











[1]
              The
respondent is The Honorable Mike Miller of the 11th District Court of Harris
County.  The underlying suit is Gloria Russell, Surviving Widow and
Representative of the Estate of Robert Russell v. Safety-Kleen Corporation et
al., No. 2008—62775 (11th Dist.
Ct., Harris County, Tex.).





[2]
              In addition, Request for Production Nos. 7 and 8,
which correspond to Interrogatory Nos. 10 and 11, also contain no time
limitation.





[3]
              We
express no opinion whether Gloria’s discovery requests are deficient for
reasons beyond those stated herein.  We
are confident that Gloria will redraft the discovery requests in every manner
necessary to tailor the requests to fit the facts and claims involved in this
case.