# IN THE SUPREME COURT OF TEXAS

═══════════

No. 20-0281

═══════════

IN RE USAA GENERAL INDEMNITY COMPANY, RELATOR

═══════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════

**Argued March 24, 2021**

JUSTICE LEHRMANN delivered the opinion of the Court.

In this suit between an insurance carrier and its insured involving the latter's entitlement to uninsured/underinsured motorist benefits under an automobile policy, the carrier seeks mandamus relief from the trial court's order compelling the deposition of the carrier's corporate representative. The carrier contends that the applicable Texas Rules of Civil Procedure prohibit the deposition because (1) the carrier's employees lack personal knowledge of relevant facts, (2) the discovery sought is obtainable from other sources that are more convenient, less burdensome, or less expensive, and relatedly (3) the burden or expense of the deposition outweighs its likely benefit. Alternatively, the carrier argues that the noticed deposition topics are overbroad. We hold that under the circumstances presented, the insured is entitled to depose the carrier's corporate representative on matters that have bearing on the disputed issues in the case. However, we emphasize the narrow permissible scope of such a deposition and hold that some of the noticed deposition topics exceed that scope. Accordingly, we grant relief in part.

# I. BACKGROUND

Frank Wearden is an insured under an automobile insurance policy issued by USAA General Indemnity Company. On August 6, 2013, Wearden was involved in a car accident with Michelle Bernal, who Wearden alleges was an underinsured driver and negligently caused the accident. Wearden settled with Bernal and subsequently sued USAA for breach of contract and a declaratory judgment, seeking to recover benefits under his policy's uninsured/underinsured motorist (UIM) provisions. Wearden asserted no bad-faith or other extracontractual claims.[1]

USAA answered with a general denial and asserted as an affirmative defense that Wearden "has not complied with all conditions precedent necessary for recovery under the policy in that the liability of [Bernal] and the nature and extent of [Wearden's] damages have not been established by judgment or agreement." USAA further asserted its entitlement to an offset "for the liability limits and/or payments attributable to any alleged tortfeasor" as well as for any payments made under other provisions of Wearden's USAA policy or any other policy.

Wearden served a notice of intent to take the oral deposition of a USAA corporate representative, requesting that USAA produce a witness or witnesses to testify about numerous topics. *See* TEX. R. CIV. P. 199.2(b)(1) (requiring a deposition notice that names an organization as a witness to "describe with reasonable particularity the matters on which examination is requested"). Wearden initially listed nineteen "areas" the deposition would cover but has amended the notice to list only the following nine:

1. Any policy(ies) of insurance issued or underwritten by the Defendant applicable to the wreck made the subject of this suit;

---

[1] When such claims are asserted, they are typically severed and abated pending resolution of the contractual claims. *In re State Farm Mut. Auto. Ins. Co.*, ___ S.W.3d ___, ___, 2021 WL 1045651, at *5–6 (Tex. Mar. 19, 2021) (orig. proceeding).

2

2. The occurrence or non-occurrence of all condition(s) precedent under the contract, including, but not limited to, collision with an uninsured motorist; and compliance by the Plaintiff with the terms and conditions of his policy(ies);

3. Any facts supporting Defendant's legal theories and defenses;

4. The amount and basis for the Defendant's valuation of the Plaintiff's damages;

5. Whether Michelle Ann Bernal was an uninsured/underinsured motorist at the time of the collision;

6. Defendant's contention that Plaintiff has failed to comply with all conditions precedent to recovery;

7. Defendant's claims and defenses regarding Plaintiff's assertions in this lawsuit;

8. Defendant's contention that it is "entitled to offsets, including any recovery by Plaintiff from other parties or their insurance carriers";

9. Defendant's affirmative defense that there are "contractual provisions with which the Plaintiff has failed to comply."[2]

The notice also included a subpoena duces tecum instructing the deponent to produce "any and all reports prepared" concerning Wearden's claim. *See* TEX. R. CIV. P. 199.2(b)(5) ("A [deposition] notice may include a request that the witness produce at the deposition documents or tangible things within the scope of discovery and within the witness's possession, custody, or control.").

---

[2] These nine topics are taken from Wearden's third amended deposition notice. Additional topics listed in the initial deposition notice but subsequently withdrawn include: the reasonableness and necessity of Wearden's past and future medical bills caused by the accident; information regarding USAA's experts; whether Bernal was driving an uninsured/underinsured vehicle at the time of the accident; USAA's contention that Wearden's recovery of medical expenses is limited to the amount actually paid or incurred; USAA's contention that appropriate pre-suit notice was not given; USAA's contention that Wearden is not entitled to recover attorney's fees; USAA's contention that it generally denies Wearden's allegations; and USAA's contention that it "does not believe [Wearden] is entitled to recover damages in the amount sought."

3

USAA filed a motion to quash the deposition notice and subpoena duces tecum, seeking "protection from any attempt to depose a corporate representative in this lawsuit." USAA explained in the motion that it "does not dispute" that:

- Wearden had a policy of insurance with USAA in effect on the date of the accident;

- Wearden is a named insured under the policy;

- The vehicle that was involved in the accident is a "scheduled vehicle" under the policy; and

- The policy provides for UIM benefits of up to $100,000 per person if Wearden "establishes his legal entitlement to recover such benefits."

In light of those concessions, USAA argued that neither how it investigated and evaluated Wearden's insurance claim nor how it evaluated the lawsuit is probative of the only issues the jury will be required to decide: whether Bernal's negligence caused the accident and the damages Wearden sustained. USAA further argued that deposing its corporate representative before any of the witnesses with first-hand knowledge of the accident and Wearden's alleged injuries and damages would be "wildly premature." Moreover, USAA contended, "[w]hatever discovery may be sought from USAA through the deposition of a corporate representative is unreasonably cumulative and duplicative or could be obtained through other sources that are more convenient, less burdensome, or less expensive," such as the eyewitnesses to the accident, the investigating officer, and designated expert witnesses. Finally, USAA asserted that the proposed deposition topics were overbroad.

Wearden responded that a party generally has the right to depose an opposing party and that it is proper in a UIM suit against a carrier for the plaintiff to depose the carrier in order to obtain information regarding liability and the carrier's own claims and defenses. Wearden

4

further noted that USAA failed to present any evidence supporting its claim that the deposition would be unduly burdensome, and he argued that the deposition topics were not overbroad.

After a hearing, the trial court denied USAA's motion to quash. The court orally noted at the hearing that "factually I see nothing that a corporate representative can add to the case," but concluded that binding precedent from the Thirteenth Court of Appeals mandated the motion's denial. *See In re Luna*, No. 13-16-00467-CV, 2016 WL 6576879, at \*7–8 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding) (mem. op.) (holding that the plaintiff was entitled to depose her UIM carrier's corporate representative regarding the disputed liability and damages issues). The court of appeals denied USAA's petition for writ of mandamus.

## II. DISCUSSION

Mandamus is an extraordinary remedy requiring the relator to show that (1) the trial court abused its discretion and (2) the relator lacks an adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). "The trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).

The parties to a lawsuit generally may obtain discovery of information that is not privileged and is "relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). Such evidence is discoverable even if it would not be admissible at trial so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the trial court "should" limit otherwise permissible discovery if:

> (a)      the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or

(b) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

TEX. R. CIV. P. 192.4. We have described Rule 192.4 as encompassing a "proportionality standard that requires 'a case-by-case balancing of jurisprudential considerations.'" *In re K & L Auto Crushers*, ___ S.W.3d ___, ___, 2021 WL 2172535, at *8 (Tex. May 28, 2021) (orig. proceeding) (quoting *In re State Farm Lloyds*, 520 S.W.3d 595, 599 (Tex. 2017) (orig. proceeding)).

USAA challenges the propriety of the corporate deposition sought by Wearden on both relevance and proportionality grounds. In evaluating those challenges, we begin with a brief discussion of the UIM framework and the issues presented in a suit for UIM benefits.

UIM coverage allows an insured to recover additional amounts when his actual damages exceed the limits of an at-fault motorist's liability insurance. *See* TEX. INS. CODE § 1952.106. When triggered, such coverage contractually requires the UIM carrier "to pay its insured the difference between the damages the insured is 'legally entitled to recover' from an at-fault motorist and the amount recovered or recoverable from the motorist's insurer." *In re USAA Gen. Indem. Co.*, ___ S.W.3d ___, ___, 2021 WL 1822944, at *4 (Tex. May 7, 2021) (orig. proceeding) (citations omitted).[3] As we explained in *Brainard v. Trinity Universal Insurance Co.*, a carrier's contractual duty to pay UIM benefits arises when "the insured obtains a judgment

---

[3] The Insurance Code mandates that UIM coverage "provide for payment to the insured of all amounts that the insured is legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle." TEX. INS. CODE § 1952.106.

establishing the liability and underinsured status of the other motorist." 216 S.W.3d 809, 818 (Tex. 2006). If the insured settles with the other motorist, he may litigate those issues directly against the UIM carrier. *Id.* (noting that "neither a settlement nor an admission of liability from the tortfeasor establishes UIM coverage"). And where, as here, the UIM carrier stipulates that the plaintiff was insured for UIM benefits and the accident was a covered occurrence under the policy, the coverage trial resembles a "typical car wreck" case involving the other motorist's liability for the underlying car accident and the existence and amount of the insured's damages. *In re Liberty Cnty. Mut. Ins. Co.*, 537 S.W.3d 214, 221 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (*Liberty I*). If the liable motorist's insurance coverage is insufficient to compensate the insured for those damages, the contractual duty to pay UIM benefits arises. *See Brainard*, 216 S.W.3d at 818 (explaining that "UIM insurance utilizes tort law to determine coverage," such that "the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined"); *see also Liberty Mut. Ins. Co. v. Sims*, No. 12-14-00123-CV, 2015 WL 7770166, at *6 (Tex. App.—Tyler Dec. 3, 2015, pet. denied) (mem. op.) (explaining that "after the jury's verdict [on liability and damages], one or both parties will present evidence to the court on UIM coverage limits, liability policy limits of the other motorist, and any other payments received by the insured for which the UIM carrier is entitled to credit").

USAA contends that the trial court abused its discretion in failing to quash Wearden's deposition notice because no USAA employees have relevant personal knowledge regarding the disputed "car wreck" issues; rather, "all anyone at USAA could do is gather information from the people (outside of USAA) who actually have relevant knowledge—the other driver and witnesses to the car wreck, police investigators, medical providers, and expert witnesses." In

turn, USAA contends that any information a corporate representative could provide would be cumulative and duplicative of the information gleaned from those sources, such that the burden of the deposition necessarily outweighs any purported benefit. USAA further argues that Wearden could obtain the information he seeks from USAA through less burdensome discovery methods, such as requests for admission or contention interrogatories. USAA alternatively contends that, to the extent the deposition notice is not quashed in its entirety, the deposition must be limited in scope to the issues related to the underlying accident.

Wearden maintains that USAA's "foundational legal premise" that USAA lacks any relevant knowledge of the underlying accident and resulting damages is "obviously false." When insurance carriers investigate their insureds' claims, they uncover, or at least may uncover, information relevant to those claims and the carriers' own defenses, and Wearden argues that he is entitled to learn USAA's contentions and knowledge regarding the live issues in the case. Wearden further notes that parties are not required to engage in discovery in any particular order, and he argues that USAA's insistence that he engage in purportedly less burdensome written discovery before seeking to depose a corporate representative finds no support in the procedural rules.

Several courts of appeals have addressed the propriety of deposing a defendant insurance carrier's corporate representative in a suit for UIM benefits in which the carrier has made coverage concessions similar to those USAA has made in this case. In *In re Liberty County Mutual Insurance Co.*, 557 S.W.3d 851, 856 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) (*Liberty II*), the Fourteenth Court of Appeals held that the trial court abused its discretion in denying Liberty's motion to quash the deposition because "the information sought

8

through the deposition already has been obtained by Plaintiff or may be obtained from other sources with less burden and expense" given Liberty's employees' lack of any direct or personal knowledge of the underlying accident. However, the same court more recently held that a UIM insured was entitled to depose Liberty's corporate representative regarding "the nature and extent of Liberty's defenses concerning fault and damages" with respect to the underlying accident, noting that the record did "not reflect that Liberty produced any evidence that [the insured] could obtain the information from other sources that would be more convenient, less burdensome, or less expensive." *In re Liberty Cnty. Mut. Ins. Co.*, 606 S.W.3d 866, 874–75 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) (*Liberty III*). Several other courts have similarly held that a UIM insured is entitled to depose the carrier's corporate representative but that the deposition's scope may not exceed the matters relevant to the subject matter of the pending suit: whether the other driver caused the accident, the amount of the plaintiff's damages, and whether the other driver's insurance coverage is deficient. *E.g.*, *In re Perry*, No. 13-18-00676-CV, 2019 WL 1723509, at *8 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2019, orig. proceeding) (mem. op.); *see also In re Garrison Prop. & Cas. Ins. Co.*, No. 12-20-00190-CV, 2020 WL 6164982, at *7 (Tex. App.—Tyler Oct. 21, 2020, orig. proceeding) (mem. op.) (same); *In re Garcia*, No. 04-07-00173-CV, 2007 WL 1481897, at *2 (Tex. App.—San Antonio May 23, 2007, orig. proceeding) (mem. op.) (holding that the trial court abused its discretion in quashing the deposition notice "in its entirety" where many of the designated topics "correspond to the defenses and theories raised by [the carrier] or have a direct bearing on the [insured's] damages").

Further expounding on the permissible scope of such depositions, some courts have identified specific deposition topics that may not be pursued because they "include matters that are clearly obtainable from some other source that is more convenient, less burdensome, or less expensive." *In re Garrison*, 2020 WL 6164982, at *7. For example, those courts have concluded that to the extent an insured requests information that would be available in her own records, such as "the nature and causation of [the] alleged injuries" and the damage sustained by the vehicles involved in the accident, deposing the UIM carrier as to the contents of those records "would be unreasonable and unduly burdensome." *In re Perry*, 2019 WL 1723509, at *8; *see also In re Garrison*, 2020 WL 6164982, at *7 (noting that the carrier "is not the appropriate party to be deposed" with respect to information that would be contained in the insured's own medical records). And the Fourteenth Court of Appeals recently disallowed topics that "concern the handling of [the insured's] claim." *In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d 635, 647 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding).

## A. Relevance

We first address USAA's contention that the procedural rules do not allow Wearden to depose its corporate representative because the representative's testimony does not involve matters that are "relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). We hold that relevance considerations do not categorically foreclose the deposition, although they do inform its scope.

As an initial matter, we note the unusual position in which USAA finds itself: arguing that Wearden is not entitled to depose the only party defendant in this suit. *See In re Perry*, 2019 WL 1723509, at *4 ("Generally speaking, a party to a suit has the right to depose the opposing

10

party."). And although Wearden does not dispute that USAA's employees lack personal knowledge of the underlying accident and Wearden's damages, that fact is not dispositive of the deposition's propriety. The procedural rules governing oral depositions impose no such personal-knowledge prerequisite. *See* TEX. R. CIV. P. 199.1(a) ("A party may take the testimony of any person or entity by deposition on oral examination before any officer authorized by law to take depositions."). Further, as noted, the rules generally allow "discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action" and confirm that "[i]t is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a). Most tellingly, the rules expressly recognize that a person has "knowledge of relevant facts" if he "has or may have knowledge of any discoverable matter," regardless of whether he has "admissible information or personal knowledge of the facts." TEX. R. CIV. P. 192.3(c).

In light of these rules, USAA's insistence that a lack of personal knowledge necessarily equates to a lack of relevant knowledge rings hollow. USAA has conceded some facts regarding coverage but disputes both Bernal's liability for the underlying accident and the existence and amount of Wearden's damages. Presumably, USAA is in possession of information that supports its position on those issues, even if gleaned second-hand.[4] That information is discoverable unless privileged, regardless of its admissibility at trial. *See Blevins v. State Farm*

---

[4] USAA claims that "all anyone at USAA could do is gather information from the people (outside of USAA) who actually have relevant knowledge," in contravention of Rule 199.2(b)(1)'s requirement that a corporate representative testify only "as to matters that are known or reasonably available to the organization." TEX. R. CIV. P. 199.2(b)(1). But USAA is not being asked to obtain additional information from outside sources; it is being asked about information it already possesses.

*Mut. Auto. Ins. Co.*, No. 02-17-00276-CV, 2018 WL 5993445, at *14–15 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.) (holding that the trial court did not abuse its discretion in quashing the plaintiff's subpoena for the UIM carrier's representative to appear as a witness at the trial on the other motorist's liability and the insured's damages). Indeed, USAA has essentially conceded that it possesses at least some information relevant to the disputed issues by asserting that Wearden should utilize other discovery methods to obtain that information. USAA's knowledge of relevant facts does not depend on the form of discovery being utilized. *See* TEX. R. CIV. P. 192.2(b) (allowing the "permissible forms of discovery" to "be taken in any order or sequence"). Accordingly, we hold that the deposition of a UIM carrier's corporate representative in a suit for UIM benefits is not categorically prohibited on relevance grounds.

However, we reiterate that the discovery conducted in such a suit—whether by deposition or any other method—may not exceed the bounds of the claims at issue. As we recently confirmed, entitlement to UIM benefits is a prerequisite to extracontractual bad-faith claims such as a carrier's "fail[ure] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear" or "fail[ure] to promptly provide to a policyholder a reasonable explanation of the basis in the policy . . . for the insurer's denial of a claim or offer of compromise or settlement." *In re State Farm Mut. Auto. Ins. Co.*, ___ S.W.3d ___, ___, 2021 WL 1045651, at *2 (Tex. Mar. 19, 2021) (orig. proceeding) (citing TEX. INS. CODE § 541.060(a)(2)(A), (a)(3)). A plaintiff may not obtain discovery on an unasserted, abated, or unripe bad-faith claim under the guise of investigating a claim for benefits. *See Liberty I*, 537 S.W.3d at 221 (holding that the requested deposition of the UIM carrier's claims adjuster as to the carrier's "claim-handling activities or its

general policies and procedures" pertained to abated extracontractual claims and did not seek information relevant to the disputed issues).

### B. Proportionality

USAA next argues that the deposition is foreclosed by Rule 192.4 because (1) the discovery sought through the deposition is "unreasonably cumulative or duplicative" or "obtainable from some other source that is more convenient, less burdensome, or less expensive" and (2) the burden or expense of the deposition outweighs its likely benefit. TEX. R. CIV. P. 192.4. Proportionality determinations are made on a case-by-case basis. *In re State Farm Lloyds*, 520 S.W.3d at 607. Further, we have said that parties "must 'support [such] proportionality complaints with evidence'" and may not rely on conclusory allegations. *In re K & L Auto Crushers*, ___ S.W.3d at ___, 2021 WL 2172535, at *9 (quoting *In re State Farm Lloyds*, 520 S.W.3d at 614); *see also In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding). The only evidence that USAA submitted with its motion to quash was the police report regarding the underlying accident. However, USAA argues that "the undisputed facts that no one at USAA was involved in the wreck, witnessed the wreck, provided medical treatment to the insured, or issued expert medical opinions about the insured [make] USAA a less convenient or appropriate witness than all other individuals who do have relevant personal knowledge about liability or damages."

In asserting that lack of personal knowledge conclusively supports its proportionality argument, USAA seeks to prove too much. Again, Wearden is seeking to take a single deposition of the single defendant in this case, and that defendant has affirmatively placed pertinent issues in dispute. If lack of personal knowledge were enough to foreclose discovery

13

from a party under Rule 192.4, then discovery would never be obtainable from such parties. The propriety of that conclusion is belied by both (1) Rule 192.3(c)'s confirmation that a person may have knowledge of relevant facts even in the absence of personal knowledge and (2) our requirement that proportionality complaints be supported by evidence rather than conclusory allegations.

Further, while discovery from USAA will likely be cumulative to some extent of information that can be gleaned from other sources, we cannot conclude on this record that it is unreasonably so, and USAA's own position counsels against such a conclusion. Again, USAA does not per se object to Wearden's obtaining any and all discovery from USAA regarding the disputed issues, notwithstanding its lack of personal knowledge. Rather, it objects to his obtaining that discovery via deposition rather than through written discovery such as requests for admission, interrogatories, and requests for production. However, we do not agree with the conclusory assertion that a deposition is inherently more burdensome than written discovery. Moreover, the rules do not favor one discovery method over another or require that those methods be enlisted in any particular order. TEX. R. CIV. P. 192.2(b) ("The permissible forms of discovery may be . . . taken in any order or sequence."); *cf. Heller v. City of Dallas*, 303 F.R.D. 466, 492–93 (N.D. Tex. 2014) (noting that under the similarly worded federal rule, a plaintiff generally may seek information through an interrogatory even if the defendant believes the subject matter would be better explored through a deposition).

That said, we do not hold that a UIM carrier can never demonstrate that proportionality concerns foreclose a corporate representative's deposition. To that end, in moving to quash the deposition notice, USAA could have disclosed documents, or referenced previously disclosed

documents,[5] providing the information in its possession regarding the liability and damages issues in the case. That information, combined with USAA's lack of personal knowledge of any relevant facts, could show that a corporate representative's deposition would provide little if any additional benefit in relation to the cost. *See Liberty II*, 557 S.W.3d at 856–57 (holding that the trial court abused its discretion in ordering the UIM carrier's corporate representative to be deposed, in part because the plaintiff had already obtained the information sought from other discovery). However, other than attaching the police report, USAA made no effort to support its assertion that a deposition would be entirely cumulative or add no value. *See State Farm Lloyds*, 520 S.W.3d at 614 (explaining that proportionality complaints must be supported with evidence, not conclusory allegations). As USAA is in the best position to make that showing, we decline to require Wearden to prove the opposite.

Rule 192.4 serves the important purpose of allowing courts to limit discovery "to prevent unwarranted delay and expense" without "unreasonably restricting a party's access to information through discovery." TEX. R. CIV. P. 192 cmt. 7. In this case, we cannot conclude that the proportionality concerns reflected in Rule 192.4—avoiding discovery that is unreasonably cumulative or for which the burdens outweigh the benefits—categorically foreclose USAA's deposition. *See In re Allstate*, 617 S.W.3d at 646 (holding that the insured "is entitled to discover Allstate's defensive contentions raised by its pleadings and the evidence

---

[5] The newly amended discovery rules now generally require parties to disclose, within thirty days after the filing of the first answer or general appearance and "[w]ithout awaiting a discovery request," "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the . . . party has in its possession, custody, or control, and may use to support its claims or defenses, unless the use would be solely for impeachment." TEX. R. CIV. P. 194.2(b)(6).

15

upon which it relies to support them"). However, as discussed below, both relevance and proportionality requirements limit the deposition's proper scope.

### C. Deposition Scope

Because a discovery request "must show a reasonable expectation of obtaining information that will aid the dispute's resolution, . . . discovery requests must be 'reasonably tailored' to include only relevant matters." *In re CSX Corp.*, 124 S.W.3d at 152 (quoting *In re Am. Optical*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding)). Considering USAA's coverage concessions and the narrow scope of the "car crash" issues in dispute, we hold that some, but not all, of Wearden's noticed deposition topics exceed the rules' permissible scope.

First, inquiry into the "facts supporting [USAA's] legal theories and defenses," whether "Bernal was an uninsured/underinsured motorist at the time of the collision," and USAA's "claims and defenses regarding [Wearden's] assertions in this lawsuit"—encompassing topics 3, 5, and 7—is permitted because these topics on their face are limited to the disputed issues. *See In re Allstate*, 617 S.W.3d at 640, 646 (allowing the UIM plaintiff to depose the carrier's corporate representative about the "[f]acts surrounding Plaintiff's claims," "[d]efenses raised in any of Defendant's live pleadings," and "[d]amage model proposed by Defendant"). Information pertaining to these topics is discoverable unless privileged, whether sought through written discovery or deposition.

However, to the extent Wearden seeks to depose USAA about all aspects of the UIM policy, USAA has already conceded that the policy provides coverage (up to the $100,000 policy limits) if Wearden establishes Bernal's liability and sufficient damages. Though USAA's answer references Wearden's failure to comply "with all conditions precedent necessary for

16

recovery under the policy," it elaborates by continuing, "*in that* the liability of [Bernal] and the nature and extent of [Wearden's] damages have not been established by judgment or agreement." (Emphasis added.) Topics 1, 2, 6, and 9, which encompass a general inquiry into the UIM policy, Wearden's compliance with the policy's "contractual provisions," and the occurrence of and compliance with "all conditions precedent to recovery," exceed the relevant subject matter of the suit and are improper. They would also serve to unnecessarily lengthen the deposition and add to its cost.

Further, USAA's entitlement to offsets—the subject of topic 8—comes into play only after a jury determines Bernal's liability and Wearden's damages in excess of liability-policy limits. *See Brainard*, 216 S.W.3d at 818; *Sims*, 2015 WL 7770166, at *6. Inquiry into offsets is premature at this "car crash" phase of the case. In any event, Wearden has equal or superior knowledge to USAA regarding his own "recovery . . . from other parties or their insurance carriers," rendering the topic improper under Rule 192.4(a). *See In re Garrison*, 2020 WL 6164982, at *7 (holding that information sought from the insured but contained in the plaintiff's own records is "clearly obtainable from some other source that is more convenient, less burdensome, or less expensive"); *In re Hamilton*, No. 13-20-00254-CV, 2020 WL 5494503, at *6 (Tex. App.—Corpus Christi–Edinburg Sept. 10, 2020, orig. proceeding) (mem. op.) (same).

Finally, as noted, we agree with USAA that inquiry into extracontractual matters such as the claims-handling process is improper before entitlement to benefits under the policy has been established. *See In re State Farm*, ___ S.W.3d at ___, 2021 WL 1045651, at *5–6 (explaining that when both contractual and statutory claims are asserted in a suit against a UIM carrier, the claims are typically bifurcated because the statutory claims cannot be resolved without first

17

determining whether the carrier has a contractual duty to pay UIM benefits); *see also Liberty I*, 537 S.W.3d at 221 (holding that a UIM carrier should not "incur litigation expenses on [issues that] may be rendered moot by the trial of the underlying accident"). We recognize that the line between a proper inquiry for relevant information and an improper inquiry into the claims-handling process may be a fine one, particularly given that whatever information USAA possesses was presumably gathered in the course of handling Wearden's claim. Further, as USAA argues, it is not required to respond to discovery seeking privileged information. *See* TEX. R. CIV. P. 192.3(a).

These considerations affect the final deposition topic we consider (topic 4)—"[t]he amount and basis for [USAA's] valuation of [Wearden's] damages." To the extent questions on this topic seek to delve into issues like USAA's reasons for denying Wearden's claim, the investigation process, USAA's work product, and USAA's privileged communications with its attorneys, such questions are improper and subject to an instruction by counsel not to answer. But because the amount of Wearden's damages is disputed, the topic is not wholly irrelevant or cloaked in privilege. Again, to the extent USAA possesses information that is not privileged and that bears on the existence and amount of those damages, that information is discoverable.

With these limits, we hold that the deposition of USAA's corporate representative is permissible under the discovery rules. So limited, it seeks relevant information and, on the record before us, is not out of proportion to the needs and circumstances of the case. However, because the trial court's discovery order authorizes a deposition that exceeds the permissible scope described above, it erroneously compels discovery of irrelevant information for which USAA lacks an adequate appellate remedy. *See In re CSX Corp.*, 124 S.W.3d at 153 (holding

18

that a responding party lacks an adequate remedy by appeal from an order compelling discovery of "patently irrelevant or duplicative [information]" because "the order imposes a burden on the [responding] party far out of proportion to any benefit that may obtain to the requesting party" (citation and internal quotation marks omitted)); *see also In re State Farm*, ___ S.W.3d at ___, 2021 WL 1045651, at *6 (explaining that in a suit for UIM benefits, extracontractual claims are abated in part to allow the insurer to avoid the expense of litigating issues that may ultimately be rendered moot).  Accordingly, USAA is entitled to partial mandamus relief.

### III. CONCLUSION

In a suit for UIM benefits in which the carrier contests the insured's entitlement to recovery by placing in issue the other motorist's liability, the existence and amount of the insured's damages, or both, we hold that the discovery rules do not categorically prohibit the deposition of the UIM carrier's corporate representative.  Although a carrier may establish that proportionality concerns foreclose the deposition, USAA has failed to do so here.  We further hold that the proper subject matter of the deposition is limited to the issues in dispute and may not intrude into matters that are privileged or are beyond the scope of those issues.  Accordingly, with respect to Wearden's noticed deposition topics exceeding that proper scope, we hold that the trial court abused its discretion in denying USAA's motion to quash and for protection and that USAA lacks an adequate appellate remedy.  Accordingly, we conditionally grant USAA's petition for writ of mandamus in part and order the trial court to vacate its order insofar as it permits the deposition to proceed as to topics that are impermissible under this opinion.  Our writ will issue only if the trial court fails to comply.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 18, 2021